Eugene Killian, Jr., Esq. (Attorney ID 2043289)
Dimitri Teresh, Esq. (Attorney ID 5125281)
THE KILLIAN FIRM, P.C.
48 Wall Street, 11th Floor,
New York, NY 10005
(732) 912-2100
ekillian@tkfpc.com
dteresh@tkfpc.com

Attorneys for Plaintiff
Jane Doe

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

JANE DOE,                                        23-CV-_____

               Plaintiff,              **COMPLAINT**

       -against-                          ECF CASE

EMPIRE HEALTHCHOICE ASSURANCE, INC.,

              Defendant.

----------------------------------------------------------------X

      Plaintiff Jane Doe herein sets forth the allegations of her Complaint against Defendant

Empire HealthChoice Assurance, Inc.

### PRELIMINARY ALLEGATIONS

      1.     This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee

Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by Plaintiff for

employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction

is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal

question. This action is brought for the purpose of obtaining benefits under the terms of an employee

benefit plan and enforcing Plaintiff's rights under the terms of an employee benefit plan. Plaintiff

seeks relief, including but not limited to: payment of benefits, prejudgment and post judgment interest, and attorneys' fees and costs.

2.       Plaintiff Jane Doe is a resident of New York. At all times relevant, Jane Doe was a participant of an employee health benefit plan (the "Plan") regulated by ERISA and pursuant to which Jane Doe and her dependent daughter M.N. were entitled to health benefits. This lawsuit concerns health benefits for M.N.'s intensive outpatient treatment in 2023.

3.       Plaintiff is informed and believes that Defendant Empire HealthChoice Assurance, Inc. ("Empire") insured and administered the benefits provided by the Plan. Empire is authorized to transact and is transacting business in the Southern District of New York and can be found in the Southern District of New York.

### **FACTUAL BACKGROUND**

<u>M.N.'s Treatment History</u>

4.       In 2022, M.N. was a 14-year-old girl with diagnosed conditions of anorexia nervosa, malnutrition, bradycardia, generalized anxiety disorder, and attention deficit hyperactivity disorder.

5.       On May 19, 2022, M.N. admitted to residential treatment at Avalon Hills Treatment Center ("Avalon"), a treatment facility specializing in treatment of patients suffering from eating disorders and related conditions, and an in-network provider with Empire.

6.       Empire approved benefits for M.N.'s residential treatment from May 19, 2022 to July 29, 2022, at which point Empire denied further benefits.

7.       Due to Empire's denial, M.N. transitioned to partial hospitalization at Avalon on July 30, 2022.

8.       Empire approved benefits for M.N.'s partial hospitalization from July 30, 2022 to November 1, 2022, at which point Empire denied further benefits.

9.      Due to Empire's denial, M.N. transitioned to intensive outpatient treatment at Avalon on November 2, 2022.

10.      Empire approved benefits for M.N.'s intensive outpatient treatment from November 2, 2022 to January 4, 2023, at which point Empire denied further benefits.

<u>Empire's Denial of Benefits for M.N.'s Intensive Outpatient Treatment</u>

11.      In a letter dated January 5, 2023, Empire denied further benefits for M.N.'s intensive outpatient treatment on the basis that it was not medically necessary. Empire wrote that the clinical criteria consider intensive outpatient medically necessary for those who (1) need supervision of meals and bathroom use, (2) motivation to recover is fair, and (3) continue to lose or struggle to maintain weight due to food restriction, too much exercise, purging, or drug use. Empire claimed that the information did not show that M.N. meets these criteria.

<u>Plaintiff's Appeal from the Denial of Benefits</u>

12.      On January 11, 2023, Avalon submitted an expedited appeal for continued intensive outpatient treatment on behalf of Plaintiff. The appeal included letters of support from M.N.'s primary dietician, primary therapist, and primary care provider at Avalon, who each provided information meeting each of the criteria required by Empire in its denial letter.

13.      M.N.'s primary dietician, Natalie Beall, wrote that M.N. had fair motivation to recover with intrusive thoughts for eating disorder urges/behaviors needing structured treatment. Ms. Beall wrote that M.N. needed supervision at all meals and snacks due to acting on behaviors such as calorie counting and underplating food. Ms. Beall wrote that without supervision at meals and snacks, M.N. would restrict or undereat. Ms. Beall wrote that M.N. still struggles to meet her intake requirements without strict supervision at the table around meals and snacks. Ms. Beall

wrote: "**If [M.N.] were to step down at this time it is likely that she will return to restricting her intake.**"

14.     M.N.'s primary therapist, Joshua Doidge, wrote that M.N. only had partial motivation to recover. Mr. Doidge wrote that at times M.N.'s behaviors indicate that she wants to go home with her "eating disorder secretly intact." Mr. Doidge wrote that M.N.'s cooperativeness was lacking when confronted about her eating disorder behaviors and "she still engages in denial and at times refuses to cooperate." Mr. Doidge wrote that some of M.N.'s obsessive eating disorder related thoughts remain a significant amount of the time and cause significant distress. Mr. Doidge wrote that M.N. is not yet entirely self-sufficient to maintain weight and she continues to need structure, monitoring, and support for her to continue eating enough food and maintaining her weight. Specifically, Mr. Doidge wrote that M.N. "continues to overreport her caloric intake, lie about her weight, and use augmentation to artificially increase her weight (such as, holding in urine and feces to increase her weight when being weighed on a scale)." Mr. Doidge also wrote that M.N. will "toss her food if she thinks no one is looking, or underplate the amount of food she should be eating." Mr. Doidge wrote that even while constantly monitored for exercising, M.N. attempts overexercising such as walking at a fast pace and squatting when she thinks no one is looking. Mr. Doidge wrote that M.N. is still currently struggling with letting go entirely of her eating disorder. Mr. Doidge wrote: "**[H]er risk of relapsing at this point is likely if she were to leave residential care. If she goes to a lower level of care at this point, her over-exercising and restricting behaviors will probably come back.** Her environment is also currently not ideal for her recovery as tension in the family, and peer influences could also increase the risk of relapse at this point."

15.     M.N.'s primary care provider, Megan Konopacke, psychiatric nurse, wrote that M.N. reports continual struggles with significant eating disorder thoughts and urges. Ms.

Konopacke wrote that M.N. has held in her urine and bowel movements to artificially augment her weight. Ms. Konopacke wrote that M.N. has the tendency to not take responsibility for her overexercising and its relationship to her eating disorder and instead, blame it on her ADHD despite evidence presented to her contradicting that statement. Ms. Konopacke wrote: "**If she were to be discharged to a lower level of care, it is likely her nutritional status would deteriorate, secondary to re-engagement of eating disordered behaviors including dietary restriction and overexercise**."

Empire Denied Plaintiff's Appeal

16.     In a letter dated January 13, 2023, Empire denied the appeal, stating, "[w]e still do not think this is medically necessary for you . . . for the following reason: you had improved to the point that could usually be treated with regular outpatient services." Empire did not address any of the information submitted on appeal.

17.     Upon recommendation by her treatment team, M.N. remained in intensive outpatient treatment at Avalon until she safely discharged on June 12, 2023.

18.     Plaintiff incurred the cost of M.N.'s intensive outpatient treatment at Avalon denied by Empire, in the amount of approximately $50,000.00.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANT**

**FOR DENIAL OF BENEFITS PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)**

19.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

20.     Defendant wrongfully denied Plaintiff's claim for benefits, in the following respects, among others:

(a)    Failure to pay health benefit payments due to Plaintiff at a time when Defendant knew, or should have known, that Plaintiff was entitled to those benefits under the terms of the Plan;

(b)    Failure to provide prompt and reasonable explanations of the bases relied on under the terms of the Plan documents, in relation to the applicable facts and Plan provisions, for the denial of the claims for health benefits;

(c)    After the claims were denied in whole or in part, failure to adequately describe to Plaintiff any additional material or information necessary to perfect the claims along with an explanation of why such material is or was necessary; and

(d)    Failure to properly and adequately investigate the merits of the claims and/or provide alternative courses of treatment.

21.    Plaintiff is informed and believes and thereon alleges that Defendant wrongfully denied Plaintiff's claims for benefits by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in this litigation and which Plaintiff will immediately make Defendant aware of once said acts or omissions are discovered by Plaintiff.

22.    Following the denial of the claims for benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA, and performed all duties and obligations on her part to be performed.

23.    As a proximate result of the denial of medical benefits, Plaintiff has been damaged in the amount of the medical bills incurred, approximately $50,000.00, with the total sum to be proven at the time of trial.

24.     Plaintiff seeks to recover benefits due to him under the terms of the plan and to enforce her rights under the plan pursuant to 29 U.S.C. § 1132(a)(1)(3).

25.     As a further direct and proximate result of this improper determination regarding the medical claims, Plaintiff, in pursuing this action, has been required to incur attorneys' costs and fees.  Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendant.

26.     Due to the wrongful conduct of Defendant, Plaintiff is entitled to enforce her rights under the terms of the Plan.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff demands for judgment against Defendant as follows:

1.     Payment of health benefits due to Plaintiff under the Plan;

2.     Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;

3.     Payment of prejudgment and post-judgment interest as allowed for under ERISA; and

4.     For such other and further relief as the Court deems just and proper.


DATED: December 4, 2023

By: _____

Dimitri Teresh, Esq.

The Killian Firm, P.C.
48 Wall Street, 11th Floor,
New York, NY 10005

(732) 912-2100

Attorneys for Plaintiff Jane Doe